Livia Kima WALLACE, Appellant,

v.

Edward Gregg WALLACE, Jr., Appellee.

No. 17804.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Aug. 20, 1981.

Rehearing Denied Sept. 17, 1981.

John H. Holloway, Houston, for appellant.

Robert J. Piro, Piro & Lilly, Bousquet & Johnson, Sheryl B. Johnson, Houston, for appellee.

Before COLEMAN, C. J., and PEDEN and SMITH, JJ.

COLEMAN, Chief Justice.

This is an appeal from a judgment entered in a non-jury divorce case attacking that portion of the decree dividing the community property of the parties. Findings of fact and conclusions of law were filed by the trial judge. The judgment will be affirmed.

■ Livia Kima Wallace and Edward Gregg Wallace were married in 1964, and separated in July, 1978. After a lengthy trial a divorce decree was signed on the 18th day of May, 1980. A motion for new trial was timely filed and the amended motion for new trial was overruled on June 19, 1980. The request of Mrs. Wallace for findings of fact and conclusions of law was filed on May 29, 1980, some twenty days prior to the signing of the judgment. A request for additional findings was filed on July 18, 1980, some twenty-nine days after the motion for new trial was overruled. Rule 296, Texas Rules of Civil Procedure, requires that a request for findings of fact and conclusions of law shall be filed within ten days from rendition of final judgment or order overruling motion for new trial. The first request is not in compliance with Rule 296. There is authority that such a premature request must be considered as a nullity. *Williams v. Royal American Chinchilla, Inc.,* 560 S.W.2d 479 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.). The request for additional findings, which was filed after the motion for new trial was overruled, was not timely filed as an original request since it was more than ten days from the date the motion for new trial was overruled. Since the court has filed findings and conclusions, additional findings and conclusions are not required to be prepared and filed by the court where they do not relate to the ultimate or controlling issues or where they conflict with the original findings and conclusions made and filed by the trial judge. *Texas v. Wiergate Lumber Company, Inc.,* 582 S.W.2d 258 (Tex.Civ. App.Beaumont 1979, writ ref. n. r. e.).

Mrs. Wallace urges that the trial court erred in failing to make findings of fact and conclusions of law on each asset and each liability of the community, separate, and trust estates, and the "factors" warranting an unequal division of property. The trial court made the following findings of fact:

1. There has been considerable discord in the marriage and the personalities of the parties are in great conflict so that making them continue in business together would not be just or right to either party.

2. The debts of the parties are such that a partition of properties and debts in kind would not be just or right to either party.

3. The full amount of the deferred cash judgment ($495,000.00) was offered by the husband to the wife and rejected by her.

4. The court finds that the value of the assets and balance of the liabilities of the parties and their children are as attached on schedule "A".

5. The partition ordered is disproportionately larger to petitioner.

The court filed one conclusion of law reading: "The partition ordered by the Court is just and right and due regard has been given to the rights of each party and the children of the marriage."

Schedule "A" referred to in the findings contains a description of substantially all of the assets of the parties and lists the current market value of most of the items, the amount of the purchase price unpaid or the lien debt due, if any, referable to the particular asset, and the net value of most of the assets listed. No value was assigned certain assets such as color TV sets, shotguns, rifles, wine, minor paintings, and personal clothing. No value was assigned to certain club memberships.

Mrs. Wallace objected to the findings filed and requested additional findings. In response the court filed these findings:

1. The townhouse at Lake Walden is owned by a trust established for the benefit of the children of this marriage.

2. Lanpar Investments Co. is a partnership, the partners of which are trusts established for the benefit of the children of this marriage.

3. The cash and securities in the name of the children are the property of the children.

4. The building located at 2243 San Felipe, Houston, Texas and the contents thereof are owned by Republic Mineral Corporation, but the mortgage thereon is a community liability of the parties.

5. The closely-held corporations identified in item 4 (a–j) on page 12 of the Divorce Decree are of nominal value.

6. The rifles awarded to Respondent under item 21, page 13 of the Divorce Decree are of nominal value.

7. The club memberships awarded to Respondent under item 7, page 13 of the Divorce Decree are of nominal value.

8. The assets of the parties, except the property identified in the findings made above as being owned by the trusts or by the children are community property with the exception of jewelry in the possession of the Petitioner which is her separate property.

9. The liabilities of the parties are community liabilities.

One additional conclusion of law was filed: "All claims for reimbursement other than those specifically awarded were denied on the basis of equity."

■ The trial court is not required to file findings of fact listing the value of each item of property owned by the estates of the parties to the divorce suit. The court is required to divide the property in a manner that is just and right. The values of the properties are evidentiary to this issue. It is the responsibility of the parties to the suit to produce evidence of the value of various properties in order to provide the trial judge with a basis upon which to make the division. One complaining of the action of the trial court in dividing the property must be able to demonstrate from the evidence in the record that the division arrived at is so unjust and unfair as to constitute an abuse of discretion. *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923). The latitude accorded to the trial court in making findings of fact to support its conclusions in regard to the just and fair manner in which

community property is divided is illustrated by the case of *Bell v. Bell*, 513 S.W.2d 20 (Tex.1974). There the trial court found:

That regardless of the legal status of such corporations and the nature of the property acquired by such corporations during the marriage of the parties, the Court finds that considering the circumstances of the parties all of the stock or other interest in such corporations should be set aside to Norman L. Bell.

Id. at 21.

In their consideration of this finding the Supreme Court held:

We interpret the finding of fact to be "that regardless of the legal status of such corporations and the nature of the property acquired by such corporations during the marriage of the parties," whether separate or community property "the Court finds that considering the circumstances of the parties all of the stock or other interest in such corporations should be and is set aside to Norman L. Bell." In other words, the court in the exercise of its discretion awarded the corporations to the husband, Norman.

Id. at 22.

In *Williams v. Williams,* 160 Tex. 99, 325 S.W.2d 682 (1959), the court held that an incorrect finding of fact with reference to the status of property, as being community rather than separate, resulting in an unequal division of the community property would not require reversal. The court held that there were other findings of fact tending to support the conclusion that the division made was "fair, just and equitable." The Supreme Court pointed out that the statute does not require an equal division of common property and held that the trial court's conclusion that the division was fair, just and equitable is an independent conclusion and will support the judgment.

In *Muns v. Muns,* 567 S.W.2d 563 (Tex. Civ.App.—Dallas 1979, no writ), the court recognized that the separate property of each spouse should be restored to the respective owner in the absence of circumstances justifying an invasion of one

spouse's separate personal property, but held that where the trial judge has made a finding that the estate of the parties has been divided in the manner that is fair, just and equitable, the fact that he may have erred in concluding that certain property was community rather than separate will not necessarily result in a reversal. The court held that the appellant has the burden of establishing an abuse of discretion and, therefore, must show that the court's failure to characterize the property resulted in a division that is not "just and right."

In *Cockerham v. Cockerham,* 527 S.W.2d 162 (Tex.1975), the court held that while a trial court has the power to disregard a jury's answer regarding disposition of property since they are only advisory, it could not ignore the jury's answers which extend to issues of fact from which the status of property is determined. Since in this case the trial judge was the finder of fact, he is required to make findings on all disputed questions involving the status of property where properly requested.

■ If the court has erred in the value placed on some items and has failed to place a value on some items of the property belonging to the parties or either of them, the judgment will not be reversed unless from the evidence as a whole it can be demonstrated that the trial court has abused its discretion in its conclusion that the property has been divided in a manner that is just and fair.

■ The factors which the court may consider in dividing the property of the parties are set out in *Murff v. Murff,* 615 S.W.2d 696 (Tex.1981). The court is not required to make findings listing the factors considered. The factors to be considered are not issues of fact to be determined by the trier of fact. In *Murff* the Supreme Court held that the trial court's failure to identify the separate property of the parties and determine any charges against such property for advances and improvements by the community estate was not reversible error where the property claimed as separate property by a party was awarded to that party.

The Supreme Court in *Murff* emphasized the wide discretion invested in the trial court in making a division of the property in these words:

> The trial court in a divorce case has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic. As the trier of fact, the court is empowered to use its legal knowledge and its human understanding and experience. Although many divorce cases have similarities, no two of them are exactly alike. Mathematical precision in dividing property in a divorce is usually not possible. Wide latitude and discretion rests in these trial courts and that discretion should only be disturbed in case of clear abuse.

Id. at 700.

■ According to the findings of the trial court the property awarded to Mrs. Wallace had a net value of $719,623.72. The property awarded to Gregg Wallace had a net value of $285,828.40. The judgment also requires Mr. Wallace to pay a fee of $75,000 to the trial attorney representing Mrs. Wallace and requires Mr. Wallace to pay all money that may be due and owing to the Federal Government from the inception of the parties' marriage to and through December 31, 1979, together with any deficiency assessments, penalties, or interest which may be due to the government for those years. He was further required to pay to Mrs. Wallace an amount of money equal to the amount of taxes that she would be required to pay for the calendar year 1980, as a result of her being required to include in her income tax return one-half the income earned by the community estate prior to the divorce decree. If the court's findings of fact relating to the values of the property are supported by evidence in the records, the division of property made by the trial court is clearly favorable to Mrs. Wallace.

The primary asset of the estate is Republic Mineral Corporation. It is actively engaged in the oil and gas business. It was

formed during the marriage of the parties in December of 1966. At that time a thousand shares of stock were issued to the father of Gregg Wallace. He had helped to provide financing by pledging various corporate notes, 105 acres of land, approximately $88,000 in stocks and he became a guarantor of all corporate debts. He was initially named president of the corporation. In 1975, Gregg Wallace became president. The corporation has multiple subsidiaries and derives income from two activities primarily, (1) oil royalties, drilling oil and gas wells and production of oil and gas, overriding royalties, and pipeline interests; and (2) promotional sales of oil leases made by Gregg. The board of directors prior to the trial of the case consisted of Mr. Wallace, Sr., Doctor R. L. Tindel, Edward Gregg Wallace, Jr., and Livia Wallace.

In 1975, Gregg and Livia executed a promissory note to Mr. Wallace, Sr., for $120,000 in payment for his stock in the corporation. Up to the date of the trial the Wallaces had not made any payments on the note.

The Ryder-Scott Company, petroleum engineers, has made studies of the leases and properties owned by Republic Mineral Corporation and has submitted reports covering several years. Mr. James C. Cordell, a vice president for Continental Illinois National Bank and the manager of the Houston office of that bank, testified that the Ryder-Scott report was used by his bank to determine the value of the collateral which they received to secure a loan made to Republic Mineral Corporation originally in the amount of $1,450,000. He testified that this loan is secured by all of the producing oil and gas properties owned by Republic Mineral Corporation plus stock in various corporations. The balance remaining on the loan is approximately $989,000. He testified that as of December 1, 1977, the future net revenue was determined by engineers from the reports of Ryder-Scott to be $5,404,000 and that the future net income as of that time was $4,383,000, the difference between the two figures being the cost of operating the properties. The Ryder-Scott report projected the production and income for each year during the period 1978 through 1992.

Mr. Donald E. Hockaday, Jr., an independent oil man, a petroleum engineer, and a qualified appraiser of oil and gas properties, had studied the Ryder-Scott reports. He testified that he was acquainted with the Ryder-Scott firm, that it was one of the two largest in the country and operates worldwide. He gave a detailed explanation of the Ryder Scott report for 1980. He testified that there was a substantial change in the number of properties involved from the year 1975, to October of 1978. He appraised the mineral assets of the Republic Mineral Corporation at the sum of $2,364,100.

Mr. Howard Gano, Jr., a certified public accountant, who prepared most of the financial statements and income tax returns for the Republic Mineral Corporation also testified at length. Many financial statements of the corporation and income tax returns for a number of years were introduced into evidence. A consolidated financial statement dated August 31, 1975, reflected total assets of $2,610,411.16 and current liabilities of $1,796,472.71. An analysis of the net worth of the corporation dated December 31, 1979, reflected assets $4,169,292.71 and liabilities of $3,038,385.04. This analysis reflected a net worth of $1,130,907.67 subject to a contingent liability on the sum of $765,000.

Mrs. Wallace was a director and company treasurer for a number of years. She was knowledgable about the business affairs of the corporation. She had secured an investigation of the books and records of the corporation prior to the trial. Mrs. Wallace presented no witness as to the values of the oil properties. Neither did she present expert testimony which would contradict the asset values assigned by the accountant in preparing his financial report. The trial court found that the market value of the stock was $800,000. Mr. Gano testified that the present net worth of the company as of December 31, 1979, was $365,907.67. The trial court had before it the exhibits upon

which this testimony was based as well as the voluminous testimony relating to the value of the assets of the corporation. The court's finding that the market value of the stock was $800,000 is fully supported by probative evidence.

The appellant urges that the trial court abused its discretion in awarding to the husband all of the corporate stock of the various corporations and the community oil and gas interests, and awarding to the wife a personal judgment of $495,000 secured by the stock in the corporation with certain guaranty arrangements. Appellant also contends that the property division considered in its entirety is not just and fair, resulting in an abuse of discretion on the part of the trial court. The findings of fact made by the trial court are attacked by "no evidence" and "great weight" points. In reviewing the "no evidence" points we may consider only the evidence and inferences properly to be drawn therefrom which will sustain the findings of fact. In reviewing the "great weight" points we must consider all of the evidence in the record.

The trial court in the exercise of its discretion in dividing community property was authorized to award all of the stock and mineral interests to Mr. Wallace, and in order to achieve an equitable balance between the parties, the court properly awarded payment of a cash sum by Mr. Wallace to Mrs. Wallace. *Garrett v. Garrett*, 534 S.W.2d 381 (Tex.Civ.App.—Houston [1st Dist] 1976, no writ); *Brunell v. Brunell*, 494 S.W.2d 621 (Tex.Civ.App.—Dallas 1973, no writ). There is evidence that Mrs. Wallace had not worked in or been a part of the corporation for eighteen months prior to the trial and that she has little expertise in evaluating, acquiring or operating oil properties. She is not experienced in the marketing and selling of oil and gas. The corporation borrows extensively from banks in order to maintain its operation and keep the business going. The trial court might well have questioned whether Mrs. Wallace would be able to obtain the large sums of money needed. There is evidence to support the trial court's finding that there was "considerable

discord in the marriage and the personalities of the parties are in great conflict so that making them continue in business together would not be just or right to either party." The fact that the trial court awarded the stock and mineral interests to Mr. Wallace and the money judgment to Mrs. Wallace cannot form the basis of a finding by this court that the trial court abused its discretion.

The books of Republic Mineral Corporation as of December 31, 1979, reflected an item entitled "accounts receivable-officers" in the amount of $551,355.83. This is considered an asset of the corporation. It also reflects under the liability account an item entitled "officers account" in the amount of $267,000. It appears that these items reflect the practice of the corporation to retain the salaries of the corporate officers but to permit them to draw such sums from the corporate account as they might require for personal needs. The books, therefore, reflect a considerable net balance due from Mr. and Mrs. Wallace to the corporation. This asset was considered in determining the fair market value of the stock of the corporation. The trial court required Mr. Wallace to assume this indebtedness. Appellant argues that since Mr. Wallace will own 100% of the stock of the corporation in all probability the debt will never be repaid and should not be considered in evaluating the gross award made to him by the judgment of the court. Since the "accounts receivable—officers" was considered as an asset and the "officers accounts" was considered as a liability in determining the net worth of the corporation, it cannot be considered again in determining the gross award to Mr. Wallace under the divorce decree. There is nothing in the record to suggest the trial court did reduce the value of the property awarded to the husband by requiring him to assume this liability in determining whether the division was just and fair.

Appellant complains that the trial court failed to give consideration to the community assets of salary retention, furniture, furnishings, and personal assets held under the

name of Republic Mineral Corporation in determining the value of that company. The analysis of net worth introduced into evidence as respondent's exhibit no. 16 reflects that Mr. Gano included these assets in his analysis.

The findings of fact relating to Oil Resources Corporation, Ohio royalty and working interests, Lampar Investment Company and Star Royalty Trust are fully supported by substantial evidence.

The appellant attacks the court's finding that the residence at 6146 Ella Lee Lane in Houston, Texas, was not the separate property of the wife and the action of the trial court in considering the value of the house in making his division of the community property. There is evidence that this house was transferred to Mrs. Wallace by the corporation during the marriage as compensation for services rendered to the corporation. The deed from the corporation recites:

> The further consideration of the Promise by the said Livia Kima Wallace to render services to Republic Mineral Corporation for the term of Six (6) Months from even date herewith; said services to consist of labor, advice, and general assistance in the operation and conduct of the ordinary business and affairs of said Republic Mineral Corporation.

Mrs. Wallace testified that the conveyance was for money due her for services and a claim being asserted. Mrs. Wallace did work for Republic Mineral Corporation for six months after the execution of the deed. The burden was on Mrs. Wallace to produce evidence to rebut the presumption that the property was owned by the community. *Tarver v. Tarver*, 394 S.W.2d 780 (Tex.1965). She failed to sustain her burden of proof. While there are recitals in the deed indicating that the property is to be held by appellant as her separate property and estate, these recitals are contradicted by the language of the deed relating to the consideration, which is promissory in nature.

An issue is also raised with reference to a house located on San Felipe Street in Hous-

ton, Texas, which was purchased by Mr. Wallace in 1978, for $350,000, in the name of his attorney. Approximately $200,000 was spent on improvements to the house and the sum of $152,800 was spent on interior decorating and furnishings. In December of 1978, Mr. Wallace conveyed the property to Republic Mineral Corporation for use as an office. In the transaction Mr. Wallace assumed the payment of the mortgage loan and was credited with the sum of $350,000 against his indebtedness to the Republic Mineral Corporation. The balance due on the mortgage at the time of the trial was approximately $217,000. No evidence or legal authority has been cited us to cast doubt on the legal validity of this arrangement.

Appellant alleges that the trial court abused its discretion in failing to take into consideration in its division of the community property the fact that some time prior to the divorce the appellee paid income taxes due the Federal Government by reason of business transactions which occurred prior to the marriage. Subsequently, during the marriage, Gregg received as income arising out of the same business transactions a sum of money considerably in excess of the amount paid in satisfaction of the income tax liability. There is evidence that this money was commingled with community funds. Apparently this was the transaction which the trial court was referring to in making its conclusion of law that the claims for reimbursement were denied on the basis of equity. The right to reimbursement is an equitable right, which may be considered by the trial court in the division of the property of the parties. In determining whether to allow the reimbursement to the community of the funds used to discharge the tax liability, the court could have considered the fact that the husband's separate funds were also comingled with the community funds in the business. *Horlock v. Horlock*, 533 S.W.2d 52 (Tex.Civ.App.Houston [14th Dist] 1975, writ dism'd) *Cadwell v. Dabney*, 208 S.W.2d 127 (Tex.Civ.App.—Austin 1948, writ ref'd n. r. e.).

Appellant has objected to the consideration by the trial court of the $120,000 promissory note which Mr. and Mrs. Wallace gave appellee's father for the stock of the corporation. There is evidence that Mr. Wallace, Sr., gave consideration for the stock when it was originally issued. There is no evidence which would require a finding that the purchase of the stock from the father was a sham transaction. While it appears from the testimony that the note might be barred by the four year statute of limitations, that matter has not been litigated and the debt is not necessarily barred by the law.

The twenty-four points of error raised by appellant have been carefully considered. No reversible error is presented. In making its disposition of the property of the parties the trial court did not abuse its discretion.

The judgment is affirmed.