James Emanuel French v. Deborah Lynn French

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-118-CV

JAMES EMANUEL FRENCH APPELLANT

V.

DEBORAH LYNN FRENCH APPELLEE

------------

FROM THE 362
ND
 DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In eleven issues, Appellant James Emanuel French complains about the trial court’s division of the community estate upon his divorce from Appellee Deborah Lynn French, and in two issues, he complains about the trial court’s denial of his motion for new trial.  Because we hold that the trial court did not err and that the evidence is sufficient to support the trial court’s findings, we affirm the trial court’s judgment.

Factual Background

James and Deborah were married on or about October 13, 1989 and separated on or about January 16, 2001.  They had twin sons who were fourteen years old at the time of the separation.  After a bench trial, the trial court granted the divorce and entered a final divorce decree naming the parties as joint managing conservators, giving Deborah the exclusive right to determine the children’s residence subject to the agreed geographic restriction, and ordering a possession schedule that gave James more time with the twins than a standard possession order would have.  Neither party appeals from any orders concerning the children; this appeal stems solely from the division of the community estate.  The trial court awarded James the following community property:

(1) all household assets in his possession or subject to his control;

(2) all of his clothing, jewelry, and personal effects;

(3) all funds in his sole name or subject to his sole control;

(4) all life insurance policies insuring his life;

(5) all stocks, bonds, and securities registered in his name, including dividends, stock splits, and other connected privileges;

(6) the 1996 Dodge Ram; and

(7) French Drainfields, Inc.

The trial court awarded Deborah the following community property:

(1) the family home;

(2) all household assets in her possession or subject to her control;

(3) all of her clothing, jewelry, and personal effects; 

(4) all funds in her sole name or subject to her sole control; 

(5) all retirement funds due to her own employment; 

(6) all union benefits;

(7) all individual retirement accounts, annuities, and variable life insurance benefits in her name; 

(8) all life insurance policies insuring her life; 

(9) all stocks, bonds, and securities registered in her name, plus dividends, stock splits, and other connected privileges; and

(10) the 1999 Chevrolet Suburban.

Additionally, Deborah’s attorney held $11,019.94 in his IOLTA account at the time of divorce, but the judge ordered that the couple’s capital gains tax be paid out of the fund and that both parties’ attorneys then be paid “the balance in equal amounts.”  The trial court found that the capital gains tax owed was approximately $2,200.00.  The evidence at trial showed that the parties’ unpaid attorney’s fees, at almost $15,000.00 before any post-decree proceedings, exceeded the amount in the IOLTA account.

James was ordered to pay the note on the Dodge pickup, any debts he had incurred since the separation, and all taxes on the property awarded to him in the decree.  Deborah was ordered to pay the mortgage on the house, the note on the Suburban, all debts she had incurred since the separation, and all taxes on the property awarded to her in the decree. 

In his motion for new trial, James complained that the trial court’s division of the marital estate was not “just and right.”  Specifically, he stated that the court gave Deborah 135.06% of the community estate and gave him negative 35.06%, even though she did not plead for a disproportionate share of the estate.  He also complained that the court failed to consider her “community interest in her day-care business.”  Inexplicably, he also stated that he had “a meritorious defense to the cause of action alleged in this case.”  The trial court denied the motion for new trial.  

In findings of fact and conclusions of law entered on the day that the motion for new trial was denied, the trial court found:

6. The property of both parties acquired by gift, inheritance, or before the marriage of the parties consists only of personal items having insignificant value.

7. During the marriage Petitioner and Respondent acquired the following property other than by gift or inheritance with the values shown:

1. Single family residence at 8424 Bernard, Sanger, Texas having a net equity of $58,000.00.

2. An incorporated business known as French Drainfields, Inc. having a net value of $40,000.00, exclusive of “good will”.

3. An interest in a lot in Krum, Texas having a value of $20,000.00.

4. An interest in a portable building having a value of $5,000.00.

5. A 1999 Chevrolet Suburban having a negative value of $1,000.00.

. . . .

7. Miscellaneous household furniture in the possession of Petitioner having a value of $3,500.00.

8. Miscellaneous household furniture in the possession of Respondent having a value of $4,500.00.

9. College St. Child Care & Learning Center, Inc. in Decatur, Texas is owned by Respondent’s parents and Respondent does not own any interest in that business.

10. There is no cash surrender value life insurance.

11. All of the parties[‘] assets and liabilities are set forth in the Divorce Decree.

12. At the time of trial neither party had cash or monies in accounts exceeding a total of $1,000.00.

13. The 2001 real property taxes assessed against [the house] were unpaid at time of trial and amounted to $2,673.00.

14. Petitioner’s unsecured debts not related to French Drainfields, Inc. or Federal Income Tax at time of trial [were] less than an aggregate of $3,000.00.

14[a]. Respondent’s unsecured debts not related to French Drainfields, Inc. or Federal Income Tax at time of trial [were] $3,120.00 in credit cards, $4,855.00 in medical bills, and $7,500.00 to her parents.

15. Respondent’s attorney of record holds in trust $11,019.94 of the parties[‘] money.  The parties owe capital gains tax of approximately $2,200.00. 

The trial court also entered a conclusion of law that the property division was “just and right.”

Legal Analysis

The House and French Drainfields, Inc.

In three issues, James challenges the trial court’s findings of the net equity of the family residence (issue four); the market value of the family business, French Drainfields, Inc. (issue five); and the market value of a lot in Krum in which French Drainfields, Inc. had an interest (issue six).  James contends that the trial court’s findings of the values of these three assets are against the great weight and preponderance of the evidence.

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions.
(footnote: 2)  Findings of fact are the exclusive province of the trier of fact.
(footnote: 3)  A court of appeals cannot make findings of fact; it can only "unfind" facts.
(footnote: 4)  Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.
(footnote: 5)  The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer.
(footnote: 6)  

In reviewing an issue asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence.
(footnote: 7)  So considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the issue should be sustained, regardless of whether there is some evidence to support it.
(footnote: 8)  We do not have to give details of supporting evidence when upholding factual sufficiency of the evidence underlying the trial court's judgment.
(footnote: 9)
 A trial court is required to divide the community estate in a just and right manner.
(footnote: 10) The values of individual items “are evidentiary to the ultimate issue of whether the trial court divided the properties in a just and right manner.”
(footnote: 11)  The parties bear the burden of providing the trial court with a basis for the division.
(footnote: 12) The party complaining of the trial court’s division must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion.
(footnote: 13)
 Evidence at trial showed that the balance remaining due on the home mortgage was about $108,000 and that the market value of the home was anywhere from $150,000 to $210,000.  The trial court’s finding that the net

equity in the house was $58,000 was not against the great weight and preponderance of the evidence.  We overrule issue four.

Similarly, evidence at trial showed that the business was worth anywhere from negative $10,000 to $115,000.  The trial court’s finding that the business was worth $40,000 exclusive of good will was not against the great weight and preponderance of the evidence.  We overrule issue five.

Additionally, the evidence showed that the interest in the lot in Krum was worth anywhere from $8,700 to $50,000.  The trial court’s finding that the interest in the lot in Krum was worth $20,000 was not against the great weight and preponderance of the evidence.  We overrule issue six. 

College St. Child Care & Learning Center, Inc. 

In issues seven through nine, James complains that the trial court’s finding that Deborah did not own any part of the daycare business was against the great weight and preponderance of the evidence and that the trial court erred in failing to divide her interest in the daycare business, and, presumably alternatively, in failing to reimburse the community for her work in the daycare business.  While a government document containing Deborah’s signature as “assistant director as co-owner” was admitted into evidence, Deborah testified at trial that she had lied on that document.  She testified that her parents, who owned the business, had wanted to give her part of the business but had not done so because of her husband.  Her father testified that Deborah did not own any of the business but that he had planned to give her the business sometime later in life.  There was also evidence that Deborah drew an annual salary from the business as an employee.  Finally, in his direct testimony, James initially omitted the daycare from the list of marital assets that he considered valuable, naming only the house and French Drainfields, Inc.  The court’s finding that Deborah did not own any of the daycare business was thus not against the great weight and preponderance of the evidence.

Additionally, because Deborah did not own any part of the business, the court properly did not consider it in dividing the community estate and properly did not award reimbursement to the community for the time Deborah spent on her job.  We overrule issues seven, eight, and nine.

Deborah’s Post-Separation Debts

In his tenth issue, James contends that the trial court’s consideration in the division of the community estate of medical expenses and a personal loan Deborah got from her parents after the date of separation was against the great weight and preponderance of the evidence and a clear abuse of discretion.  He does not challenge the values assigned the debts.  Instead, he argues that the debts were Deborah’s sole and separate property.  James misstates both the burden of proof and the law.  

Debts contracted during the marriage are presumed to be community unless it is shown that the creditor agreed to look solely to the separate estate of the contracting spouse for payment of the debt.
(footnote: 14)  The party seeking to overcome the presumption must do so by clear and convincing evidence.
(footnote: 15)
 Evidence showed that the unsecured debts incurred by Deborah after separation but before the divorce included medical bills and a personal loan from her parents for medical expenses, attorney’s fees, and living expenses.  The trial court awarded the debts to Deborah in the divorce decree.  James does not cite evidence, nor do we find any, that the creditors agreed to look solely to Deborah’s separate estate for payment.  James has not overcome the presumption that the debts were community debts.  The trial court thus did not err or abuse its discretion by including the debts in the community estate.  We overrule issue ten.

In his eleventh issue, James contends that the trial court erred in finding that Deborah’s gifts were of insignificant value.  He argues that the $7,500 loan from Deborah’s parents was a gift.  No evidence supports his contention.  The evidence supports the trial court’s treatment of the $7,500 as a loan.  We overrule issue eleven.

Division of the Community Estate and Denial of the Motion for New Trial

In issues one through three, James complains that the trial court erred by not dividing the estate in a “just and right” manner and that the trial court awarded Deborah a “disproportionate share of the community estate” when neither the pleadings nor the evidence supported an inequitable division. 

A trial court is charged with dividing the community estate in a “just and right” manner, considering the rights of both parties.
(footnote: 16)  If there is any reasonable basis for doing so, we must presume that the trial court exercised its discretion properly.
(footnote: 17)  We will not disturb the trial court’s division unless the record demonstrates “that the division was clearly the result of an abuse of discretion.”
(footnote: 18)  That is, we will not reverse the case unless the record clearly shows that the trial court was acting arbitrarily or unreasonably.
(footnote: 19)  The complaining party has the burden of proving from the record that the division was so unjust that the trial court abused its discretion.
(footnote: 20)
 The record shows that James was awarded miscellaneous furniture in his possession, valued at $3,500; French Drainfields, Inc., valued at $40,000, exclusive of good will; and up to $1,000 in cash and bank accounts.  Unsecured debts awarded to James totaled less than $3,000.  The net value awarded to James was thus about $41,500 plus the 1996 Dodge truck.

The record also shows that Deborah was awarded the house, valued at $58,000, the 1999 Chevy suburban, valued at negative $1,000, miscellaneous furniture valued at $4,500, and up to $1,000 in cash and bank accounts.  Her debts included real property taxes of $2,673, credit card debt of $3,120, medical bills of $4,855, and the personal loan of $7,500.  The net value awarded to Deborah was thus about $44,350.  Both parties also owed attorney’s fees because the total attorney’s fees were estimated to exceed the amount in Deborah’s attorney’s IOLTA fund.  

We have already upheld all challenged findings.  Based on the law and the facts, we hold that Deborah was not awarded a disproportionate share of the estate and that the trial court did divide the community estate in a “just and right” manner.  Consequently, the trial court did not abuse its discretion in dividing the community estate.  We therefore overrule issues one, two, and three.

In his twelfth issue, James complains that the trial court erred by denying his motion for new trial “because the division of the community estate was not just and right.”  We have already held that the trial court’s division of the community estate was “just and right.”  We overrule issue twelve.

In his final issue, James contends that the trial court erred by denying his motion for new trial because James “had a meritorious defense to the cause of action alleged in the case.”  James petitioned for divorce.  Deborah answered and counterpetitioned for divorce.  Both parties appeared and participated in trial with their attorneys.  We see no merit in this issue.  Even if it had merit, “Appellant's mere recitation that he has a meritorious defense to the cause of action alleged and that the trial court erred in granting the divorce does not sufficiently specify the grounds for Appellant's complaint under rule 33.1(a).”
(footnote: 21)  We overrule issue thirteen.

Conclusion

Having overruled all of James’s issues, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: DAUPHINOT, LIVINGSTON, and HOLMAN, JJ.

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).

3:
Bellefonte Underwriters Ins. Co. v. Brown
, 704 S.W.2d 742, 744 (Tex. 1986). 

4:
Tex. Nat'l Bank v. Karnes
, 717 S.W.2d 901, 903 (Tex. 1986).

5:
McGalliard v. Kuhlmann
, 722 S.W.2d 694, 696 (Tex. 1986); 
Reliance Ins. Co. v. Denton Cent. Appraisal Dist.
, 999 S.W.2d 626, 629 (Tex. App.—Fort Worth 1999, no pet.).

6:
Ortiz v. Jones
, 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel
, 881 S.W.2d 295, 297 (Tex. 1994).

7:
Ames v. Ames
, 776 S.W.2d 154, 158-59 (Tex. 1989), 
cert. denied
, 494 U.S. 1080 (1990); 
Cain v. Bain
, 709 S.W.2d 175, 176 (Tex. 1986).  

8:
Watson v. Prewitt
, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); 
In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). 

9:
Ellis County State Bank v. Keever
, 888 S.W.2d 790, 794 (Tex. 1994).

10:
Tex. Fam. Code Ann. 
§ 7.001 (Vernon 1998).

11:
Finch v. Finch
,
 
825 S.W.2d 218, 221 (Tex. App.—Houston [1st
 Dist.] 1992, no writ); 
see Wallace v. Wallace
, 623 S.W.2d 723, 725 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism’d).

12:
Finch
, 825 S.W.2d at 221; 
Wallace
, 623 S.W.2d at 725.

13:
Pletcher v. Goetz
, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied).

14:
Cockerham v. Cockerham
, 527 S.W.2d 162, 171 (Tex. 1975); 
Sprick v. Sprick
, 25 S.W.3d 7, 13 (Tex. App.—El Paso 1999, pet. filed); 
Morris v. Morris
, 894 S.W.2d 859, 863 (Tex. App.—Fort Worth 1995, no writ).

15:
Sprick
, 25 S.W.3d at 13; 
see
 
Tex. Fam. Code Ann. 
§ 3.003(b) (Vernon 1998).

16:
Tex. Fam. Code Ann. 
§ 7.001.

17:
Pletcher
,
 
9 S.W.3d at 446.

18:
Id.

19:
See Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

20:
Pletcher
, 9 S.W.3d at 446.

21:
Guyot v. Guyot
, 3 S.W.3d 243, 248 (Tex. App.—Fort Worth 1999, no pet.); 
see
 T
ex
. R. A
pp
. P. 33.1(a).