IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00277-CR

 

Ex
parte George Earl Jenkins

 

 

 



From the 272nd District Court

Brazos County, Texas

Trial Court No. 06-002059-CV-272

 



memorandum opinion and ORDER










 

          Defendant filed a petition for writ of
habeas corpus alleging that he was unlawfully restrained on an offense for
which he had not been indicted and was being held pursuant to a void warrant
issued by the Texas Department of Criminal Justice - Parole Division
(“TDCJ-PD”).  A hearing was held on the petition for writ of habeas corpus and
the trial court granted a personal recognizance bond on the unindicted
offense.  The trial court repeatedly informed the defendant that the trial
court did not have any authority over the defendant’s restraint under the warrant
issued by the TDCJ-PD.  The defendant now attempts to bring an appeal of the
trial court’s determination that it has no authority to determine the validity
of the defendant’s restraint under the warrant issued by the TDCJ-PD.

          The warrant was issued based on an
administrative release from a prior felony conviction.  By his petition, the
defendant challenges the validity of that warrant.  As such, it appears that
this portion of the defendant’s challenge is a post-conviction writ of habeas
corpus which the trial court refused to “issue.”  But this case has been
presented to us as a direct appeal.  It is an attempted direct appeal over
which we have no jurisdiction because it is actually an attempted
post-conviction writ, and we have no jurisdiction of post-conviction writs of
habeas corpus.  Kim v. State, 181 S.W.3d 448, 449 (Tex. App.—Waco 2005,
no pet.)

          Upon a thorough review of the pleading
and the defendant’s arguments to the trial court, it appears to us that the
proper characterization of the defendant’s current complaint is as a
post-conviction writ of habeas corpus made returnable to the Court of Criminal
Appeals.  The trial court has conducted a hearing and made a record.  It may
now be proper for the Court of Criminal Appeals to review the petition.  

          Accordingly, we believe it is proper
to dismiss this appeal for want of jurisdiction and forward the entire record
to the Court of Criminal Appeals.  

          It is so ordered.  

          The Clerk of this Court is ordered to
retain only a copy of this opinion and order in its file and forward all other
contents to the Court of Criminal Appeals.

 

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Before Chief Justice Gray,

          Justice Vance, and

          Justice Reyna

(Justice Vance joins the opinion but declines to
join the order with a note)*

Appeal dismissed

Opinion delivered and Order issued and filed
October 18, 2006

Do not publish

[CR25]

 

 

*(Note
by Justice Vance:  “Justice Vance does not join in the order to forward the Record
to the Court of Criminal Appeals.”)






0;                                                                                    

      Gregory Burr (Greg) appeals from a divorce decree and division of the marital estate in three
points of error. He first complains of the court's characterization of certain items of property; his
second point is leveled at the admission of certain evidence of cruelty as a ground for awarding
a disproportionate share of the community estate to his wife, Judy Burr; and in point three Greg
alleges that the court failed to consider his separate estate's right of reimbursement from the
community estate.
BACKGROUND
      Greg and Judy were married for the first time from November 2, 1985, until they divorced
on August 27, 1987. They remarried on January 29, 1991. The second divorce occurred on
January 27, 1994, and it is from this divorce that Greg appeals. While the parties have stipulated
to the ownership of many items of property and other issues incident to divorce, the ownership
of a number of items remains contested. 
      On December 12, 1987, more than three months following their first divorce, Greg was
involved in a work-related explosion. He sued for injuries sustained as a result of the explosion,
seeking damages for severe post-traumatic stress and depression disorders, mental anguish, grief,
past and future medical expenses, past lost earnings and loss of earning capacity, exemplary
damages, and pre- and post-judgment interest. Approximately three days following the accident,
Judy moved back in with Greg. She claims that a common-law marriage was established at that
time, which existed until their second ceremonial marriage.


 Greg disputes this contention. 
      Judy was never a party to Greg's personal injury suit, but by the time it was settled and
monies were paid on February 12, 1992, she and Greg had remarried. The settlement documents
identified both Greg and Judy as "CLAIMANT" throughout, and they both executed the
documents. Furthermore, one paragraph of the release recited:
As part of the consideration for the payment of the above mentioned sum of money, JUDY
BURR hereby expressly states . . . and does here and now agree to indemnify and to hold
harmless and to defend each and all of the parties hereby released from any and all claims,
demands, actions and causes of action for loss of consortium, affection, solace, comfort,
companionship, society, assistance, emotional support, love, felicity, care, guidance,
protection, services, wages or other loss or damage in connection with any relationship
between GREGORY A. BURR and anyone . . . . 
      The defendant in the personal injury suit made the settlement check payable to both Greg and
Judy, and they both endorsed the check. After paying attorney's fees and expenses, Greg and
Judy received $100,000 from the settlement. Greg deposited the settlement check into a savings
account that had approximately $21 in it. Two days later he withdrew the money and purchased
four certificates of deposit (CDs) with $80,000 of the $100,000. He deposited the remaining
$20,000 of the settlement proceeds into their joint checking account.
      On June 26, 1992, Greg withdrew the funds in three of the CDs totaling $71,229.03 and
deposited them back into the savings account. On June 30, he withdrew money from the savings
account and made a $64,000 downpayment on a new home.


 The Burrs financed the remaining
$15,000 of the home's purchase price by a promissory note signed by Greg and Judy. The deed
of trust securing the note identified both of them as "grantors."
      Greg and Judy made a number of major purchases following the personal-injury settlement,
including a sofa, loveseat, two end tables, a coffee table, two marble lamps, and a 52-inch
television set. They paid for these purchases out of their joint checking account.
      Greg argues that the settlement proceeds were his separate property. He contends that he
successfully traced those proceeds to the purchase of the various home furnishings listed above,
to the purchase of the CDs, and to the downpayment of the home. 
      The court, however, concluded that all the property belonged to the parties' community estate
or that, alternatively, all property is community except for the home, which is held as tenants in
common between the community estate (1/5), the separate estate of Greg (2/5), and the separate
estate of Judy (2/5). We hold that the court correctly characterized all of the property as
community property.



CHARACTERIZATION OF PROPERTY
      Property possessed by either spouse during or on dissolution of marriage is presumed to be
community property, and a party attempting to rebut the presumption must show by clear and
convincing evidence that the property is separate property. Tex. Fam. Code Ann. § 5.02
(Vernon 1993). A party may meet this burden by tracing assets on hand at dissolution to property
that, because of its time and manner of acquisition, is separate in character. Cockerham v.
Cockerham, 527 S.W.2d 162, 167 (Tex. 1975). The Texas Family Code provides that a spouse's
separate property consists of the following:
      (1)  the property owned or claimed by the spouse before marriage;
       (2)  the property acquired by the spouse during marriage by gift, devise, or descent; and
       (3)  the recovery for personal injuries sustained by the spouse during marriage, except any
recovery for loss of earning capacity during marriage. 
Tex. Fam. Code Ann. § 5.01 (a)(1-3) (Vernon 1993). In addition to the loss of earning capacity
exception in section 5.01(a)(3), the Texas Supreme Court has held that recovery for medical and
other related expenses, to the extent that the marital partnership has incurred them, is community
property. Graham v. Franco, 488 S.W.2d 390, 396 (Tex. 1972). 
      Greg contends that the settlement check was for personal injuries he sustained prior to
marriage and is, therefore, his separate property. However, a cause of action for personal injuries
is not "property" that can be "owned or claimed by the spouse before marriage." Id.


 At the time
of his marriage to Judy, whether informal or ceremonial, Greg did not possess "property" but
rather a claim for personal injuries. Therefore, the proceeds of the settlement check, which could
have been traceable to Greg's injury, were not traceable to "property owned or claimed by the
spouse before marriage." See Tex. Fam. Code Ann. § 5.01(1); Graham, 488 S.W.2d at 395.
      Greg's claim that the settlement check is his separate property must therefore be based on
section 5.01(a)(3), i.e., that recovery for certain elements of a personal injury is the separate
property of a spouse. However, allegations in his pleading at the time of the settlement included
both separate property damages, such as mental anguish and grief, and community property
damages such as loss of earning capacity and medical expenses. See Tex. Fam. Code Ann. §
5.01(a)(3); Graham, 488 S.W.2d at 396. Furthermore, although Judy was not a party to the suit,
and most likely possessed no viable claim for damages resulting from Greg's injuries,


 the
defendant in Greg's personal-injury suit paid some consideration for Judy's promise "to indemnify
and hold harmless and to defend each and all of the parties hereby released from any and all
claims, demands . . . ." Consideration received in exchange for Judy's promise would be
community property. See Tex. Fam. Code Ann. § 5.01. 
      The defendant paid the Burrs $100,000 in consideration for a number of things: the release
of all of Greg's claims—separate property claims and community claims—and also Judy's promise
to indemnify, hold harmless, and defend. The settlement documents do not distinguish how much
was paid in exchange for Judy's promise or for medical expenses and loss of earning capacity,
recovery for which would be community property, and how much was paid for Greg's separate-property claims. 
      Greg had the burden of showing by clear and convincing evidence how much of the settlement
was paid in consideration for his separate-property injuries. Without evidence of the settlement
breakdown, such a task is impossible. Greg did not successfully trace any portion of the
settlement proceeds to monies paid to compensate him for his separate-property damages, and the
entire check and all purchases made therefrom are thus properly characterized as community
property. See id. § 5.02. The trial court properly characterized all of the parties' property as
community property, and point one is overruled.
GREG'S CLAIM FOR REIMBURSEMENT
      A claim for reimbursement arises when funds or assets from one of the marital estates are
used to benefit another marital estate without the contributing estate receiving some benefit. 
Vallone v. Vallone, 644 S.W.2d 455, 458-59 (Tex. 1982). Greg had the burden to prove that
expenditures from his separate estate were made for the benefit of the community estate and that
the expenses were reimbursable. See id. Because he failed to establish that the settlement
proceeds were, in fact, his separate property, his claim for reimbursement must also fail. See id. 
We overrule the third point.
ADMISSION OF EVIDENCE OF CRUELTY
      Greg and Judy stipulated a number of issues. One stipulation read: "This is not a contest on
the issue of divorce. Divorce is granted on insupportability." The court accepted the parties'
stipulations, heard no evidence regarding the grounds for divorce, and granted it on the grounds
of insupportability. 
      Greg contends that the court erred in admitting, over his objection, evidence of cruelty in
support of Judy's claim for a disproportionate share of the community estate. He claims that,
because the parties stipulated that the ground for divorce was insupportability, evidence of cruelty
was improperly admitted and could not be considered in the division of the property.
      The Texas Supreme Court has held that in a fault-based divorce, or in a divorce based upon
both fault and no-fault, the court may properly consider fault in the breakup of a marriage when
dividing the parties' property. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). That court has
declined to express an opinion concerning the same issue in a "no-fault" divorce. Young v. Young,
609 S.W.2d 758, 761 (Tex. 1980). Here, even if the court erred in admitting evidence of cruelty,
for two reasons we hold that such error was harmless. See Tex. R. App. P. 81(b)(1). 
       First, Greg failed to show that the property division was, in fact, disproportionate. He never
provided values on many of the items of property to the trial court. Rather, he provided values
only of those items he contended were purchased with the settlement proceeds and were therefore
his separate property. 
It is the responsibility of the parties to the suit to produce evidence of the value of various
properties in order to provide the trial judge with a basis on which to make the division. One
complaining of the action of the trial court in dividing the property must be able to
demonstrate from the evidence in the record that the decision arrived at is so unjust and unfair
as to constitute an abuse of discretion.
LeBlanc v. LeBlanc, 761 S.W.2d 450, 453 (Tex. App.—Corpus Christi 1988), writ denied per
curium, 778 S.W.2d 865 (Tex. 1989); Wallace v. Wallace, 623 S.W.2d 723, 725 (Tex.
App.—Houston [1st Dist.] 1981, writ dism'd). Because Greg did not provide the court values of
the majority of the items, he cannot now complain of the court's lack of information. See id. 
      Second, even if the division of property were disproportionate, factors other than cruelty
support the court's division. Other factors a court may properly consider include the spouses'
capacities and abilities, education, business opportunities, relative physical conditions, relative
financial condition and obligations, and disparity of earning capacity. Murff, 615 S.W.2d at 696. 
Furthermore, the Texas Supreme Court has noted that the burden of the care and maintenance of
the children is a factor that justifies an unequal division of the property. Young, 609 S.W.2d at
760. 
      The court divided the following property, which was all of the property not included in the
parties' stipulations.


 It awarded Greg the following: couch, loveseat, two marble lamps, pots,
pans, dishes and glasses, one silverware set, the pool table and pool sticks. The court awarded
Judy the 52-inch television, six pictures, the centerpiece on top of the television, black vase with
flowers, another television, china and hutch, refrigerator, microwave, dishes, glasses, one
silverware set, entertainment center, VCR and children's movies, built-in bookcase, washer,
dryer, lawn mower, weed eater, garden tools, lawn furniture, pool supplies and toys, two
children's bikes, and the playhouse. Additionally, the court awarded Judy the furnishings in the
children's bedrooms and bathroom. Greg testified that he did not contest the award of the
children's items to Judy because the parties had stipulated that she would be named sole managing
conservator of their minor children. Moreover, the court ordered the home set aside for the use
and benefit of Judy and the children. 
      Many of the items awarded to Judy were likely awarded to her as the children's conservator,
and the court was justified in so doing. See id. The rights of the children are properly considered
in the court's division of the community estate. See Tex. Fam. Code Ann. § 3.63(a). The
court's findings of fact and conclusions of law note that it had considered the best interest of the
children, and that the property division was just and right, having due regard for their rights and
the rights of the parties.
      There is also evidence from which the court could have reasonably inferred a disparity of
earning power between the parties. Greg testified to making approximately $25,000 per year as
a furniture finisher. Other than her experience as a housewife, Judy possessed retail sales and
clerical experience. Although the record contains no evidence of her earning power, the court
could have reasonably inferred that it would be less than $25,000 per year.
       When the court divides the community estate, it may do so in a way it deems just and right,
having due regard for the rights of each party and any children of the marriage. Tex. Fam. Code
Ann. § 3.63 (a) (Vernon 1993). It has broad discretion in dividing the property, and we presume
that the trial court exercised its discretion properly. See Murff, 615 S.W.2d at 699. The test for
abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court's action, but whether the court acted arbitrarily or
unreasonably. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985),
cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). We cannot say from the
record before us that the court acted arbitrarily or unreasonably in its division of the property. 
See Downer, 701 S.W.2d at 241-42.
      The judgment is affirmed.
 
                                                                               BOB L. THOMAS
                                                                               Chief Justice

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion issued and filed June 12, 1995
Do not publish