NO. 07-03-0081-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



MAY 11, 2004



______________________________




IN THE MATTER OF THE MARRIAGE OF


WALTER CHARLES BROGAN, III AND TINA MARIE BROGAN


AND IN THE INTEREST OF WILLIAM CHRISTOPHER BROGAN


AND SHAUN PATRICK BROGAN, MINOR CHILDREN



_________________________________



FROM THE COUNTY COURT AT LAW NUMBER TWO OF LUBBOCK COUNTY;



NO. 2001-514,816; HONORABLE DRUE FARMER, JUDGE



_______________________________




Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

MEMORANDUM OPINION


 Presenting four issues, appellant Tina Marie Brogan contends the trial court erred
in failing to enforce a settlement agreement between her and her husband, Walter Charles 
Brogan and abused its discretion in making its division of the property and setting the
amount of child support. By her issues, she contends the trial court (1) erred in finding the
settlement agreement was neither a settlement agreement nor a partition and exchange
agreement, (2) abused its discretion in failing to properly value a majority of both
community and separate estate property, (3) abused its discretion in awarding only $1,500
in child support, and (4) erred in striking her supplement to counterclaim and answer to
Charles's current pleading insofar as it pled causes of action by Brogan, Ltd. against
Brogan, P.A. We affirm.

 Tina and Charles were married on May 25, 1991, and two children were born of the
marriage. Charles filed his petition for divorce on August 7, 2001. The case was set for
a non-jury trial on May 7, 2002, and following a recess, additional evidence was received 
until the parties rested and closed on July 2, 2002. The trial court signed the decree of
divorce on December 6, 2002, which was followed by Tina's request for findings of fact and
conclusions of law, which were filed by the trial court on August 6, 2003. Before we
commence our analysis, we first set out the standard of review in a non-jury trial.

Standard of Review


 Findings of fact in a bench trial have the same force as a jury's verdict upon jury
questions. City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex.Civ.App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.). However, the findings are not conclusive when
a complete statement of facts appears in the record if the contrary is established as a
matter of law or if there is no evidence to support the findings. Middleton v. Kawasaki Steel
Corp., 687 S.W.2d 42, 44 (Tex.App.--Houston [14th Dist.] 1985), writ ref'd n.r.e., 699
S.W.2d 199 (Tex. 1985) (per curiam). Findings of fact are reviewable for factual and legal
sufficiency under the same standards that are applied in reviewing evidence supporting a
jury's answer. Zieben v. Platt, 786 S.W.2d 797, 799 (Tex.App.--Houston [14th Dist.] 1990,
no writ); see also W. Wendell Hall, Revisiting Standards of Review in Civil Appeals, 24 St.
Mary's L.J. 1045, 1145 (1993). 

 Our review of trial court conclusions of law is de novo. In re Humphreys, 880 S.W.2d
402, 403 (Tex. 1994), cert. denied, 513 U.S. 964, 115 S. Ct. 427, 130 L. Ed. 2d 340 (1994). 
However, as noted above, although findings of fact are reviewable for legal and factual
sufficiency, an attack on the sufficiency of the evidence must be directed at specific findings
of fact rather than at the judgment as a whole. In re M.W., 959 S.W.2d 661, 664 (Tex.App.
--Tyler 1997, writ denied). Further, the rule has often been otherwise stated that if the trial
court's findings of fact are not challenged by a point of error on appeal, they are binding
upon the appellate court. Northwest Park Homeowners Ass'n, Inc. v. Brundrett, 970 S.W.2d
700, 704 (Tex.App.--Amarillo 1998, pet. denied); Carter v. Carter, 736 S.W.2d 775, 777
(Tex.App.--Houston [14th Dist.] 1987, no writ).

Settlement Agreement


 By her first issue, Tina actually presents two contentions. First, she contends the
finding of fact that the Brogan Settlement was neither a settlement agreement nor a partition
and exchange agreement is against the great weight and preponderance of the evidence. 
By her second contention, she asserts there was insufficient evidence to support the court's
finding that the Brogan Settlement was unenforceable. We disagree.


Second Contention


 Tina argues the evidence was insufficient to support the court's finding that the
Brogan Settlement was unenforceable. However, in America's Favorite Chicken Co. v.
Samaras, 929 S.W.2d 617, 622 (Tex.App.--San Antonio 1996, writ denied), the court held
that whether an agreement is legally enforceable or binding is a question of law. See also
Ronin v. Lerner, 7 S.W.3d 883, 886 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Tina's
second contention is overruled.

First Contention


 Without advice or any assistance from counsel or others, on November 11, 2001,
Tina and Charles prepared and signed a two and one-half page written document entitled
"Brogan Settlement." The writing can best be described as a "homemade" document
organized in two sections. (1) By the first section, Charles agreed to


 pay $9,000 child support until youngest son graduates from high
school or is 18;
 pay private school tuition for the children;
 pay health insurance until the sons enter college or longer;
 put aside money for their college education as possible;
 pay their psycologist's (sic) bills until deemed no longer necessary by
their provider;
 upon the "understanding" that Tina will voluntarily reduce the "amount"
by whatever her take-home pay is when she becomes employed; and
 upon remarriage, co-habitation, or sale of 9111 Salem Drive, support
will decrease to 1/2 or $5,000 per month, whichever is larger.



By the second section, the parties provided for a split of their community property as
follows:


 all business entities become the property of Charles; HRT, Prevention
Works, and W. Chuck Brogan, III, M.D. Ph.D., including house at 4612
13th St. and business property at 4110 22nd Place;
 contents of 3310 31st St. become the sole property of Charles;
 9111 Salem become the property of Tina Brogan;
 contents of 9111 Salem will be split as mutually agreed upon;
 personal bank accounts remain personal;
 amount in the joint checking account and savings account will be the
property of Tina Brogan;
 Charles Brogan and Tina Brogan retain their life insurance policies as
their sole and separate property;
 regarding Brogan, Ltd.:


 Charles to buy 4110 22nd Place from the Ltd. for
$85,000 above the construction loan amount
currently owed to American State Bank and will
pay the taxes currently owed.

 Tina will retain ownership of 9109 Salem Drive
and 3110 31st Street.


The agreement concluded: 


 [t]he stock account as currently held by Paine Webber (Rolf Siebert, broker)
will be split 50/50, share for share. The parties agree to will their portions to
their children, William C. Brogan and Shaun P. Brogan. 




Thereafter, the Brogan Settlement was delivered to a neutral attorney who drafted and
prepared documents, deeds, agreements, partnership dissolution agreement, and other
documents to implement the plan. The documents prepared by the neutral attorney were
dated December 31, 2001, and signed by Charles; however, Tina did not sign them until
January 22, 2002, and testified that she was willing to sign the decree at the hearing on
June 17. Upon Tina's refusal to sign the decree of divorce and documents, Charles
deemed the agreement not binding and proceeded with the divorce. By her brief, Tina
contends the agreement purported to be a final resolution of the issues addressed and
nothing was left to further negotiation, except the execution of documents.

 To encourage the settlement of marital property divisions the Legislature authorized
written agreements "concerning the division of the property and the liabilities of the
spouses and maintenance of either spouse." Tex. Fam. Code Ann. § 7.006 (Vernon 1998). 
However, the statute provides that either spouse may repudiate the agreement before the
divorce. Also, section 7.006 provides that the written agreement is not binding upon the
court unless it finds that the terms of the written agreement are just and right. Moreover,
the trial court is not bound by the parties' written agreement which does not purport to
settle the entire property division. Finn v. Finn, 658 S.W.2d 735, 747 (Tex.App.--Dallas
1983, writ ref'd n.r.e). 

 Written property settlement agreements as authorized by section 7.006 are
governed by general contract law. Deen v. Deen, 631 S.W.2d 215, 217 (Tex.Civ.App.--Amarillo 1982, no writ). As we noted in Sourignavong v. Methodist Healthcare Sys., 977
S.W.2d 382, 385 (Tex.App.--Amarillo 1998, no pet.), a meeting of the minds of the parties
is essential to the creation of a valid contract. Accordingly, the court may not make a
contract for the parties, and an agreement which is subject to future negotiations is not
binding upon the parties. See Fort Worth Indep. School Dist. v. Fort Worth, 22 S.W.3d
831, 846 (Tex. 2000); see also Central Texas Micrographics v. Leal, 908 S.W.2d 292, 296
(Tex.App.--San Antonio 1995, no writ).

 The intention of the parties to an agreement is normally a question of fact. See
Scott v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 555 (Tex. 1972). Also see, Ishin Speed
Sport, Inc. v. Rutherford, 933 S.W.2d 343, 348 (Tex.App.--Fort Worth 1996, no writ). 
However, whether an agreement is legally enforceable is a question of law. Ronin, 7
S.W.3d at 886. Because Tina attacks the factual sufficiency of an adverse finding on
which she had the burden of proof, she must demonstrate that the adverse finding is
against the great weight and preponderance of the evidence. After considering all the
evidence, a court of appeals may only set aside the finding if the evidence is so weak or
if the finding is so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust. Dow Chemical Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001);
see also Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

 By her brief, Tina carefully reviews the evidence regarding hers and Charles's
intentions regarding the agreement prepared by them without the assistance of counsel. 
Notwithstanding the able analysis, it fails to overcome the several flaws and deficiencies
which renders the document incomplete and unenforceable. 

 Liabilities. Section 7.006 requires that the written agreement must also cover the
liabilities of the parties. However, the November 24, 2001 document does not address
allocation of liabilities which, according to the record, are significant. Further, it does not
attempt to cover the ordinary income tax liability for the year 2001 and the potential income
tax liability which may have been brought about as a result of a property division and
dissolution of a partnership.

 All Property. Under Finn, 658 S.W.2d at 747, the trial court is not bound by an
agreement which does not purport to settle the entire property. Here, a comparison of the
property mentioned in the November 24, 2001 document with the property and assets
reflected by the record and the decree demonstrates that the automobiles, investment
retirement accounts, one note receivable, and significant accounts receivable were not
covered. Moreover, the office furniture and equipment, computer software, and medical
equipment described as community property in the findings of fact were not covered either.

 No Residuary Clause. As used in a property settlement agreement incorporated
into a decree of divorce, a residuary clause may be effective to transfer property not
specially set aside to either party, to the spouse as designated in the residuary clause. 
See Buys v. Buys, 924 S.W.2d 369, 371 (Tex. 1996). Here, however, even though the
agreement did not address all the property, because of the absence of a residuary clause,
the homemade agreement was an incomplete division of the property of the parties.

 Paine Webber Account. By the final section, the parties stated that the stock
account at Paine Webber would be "split 50/50, share for share. The parties agree to will
their portions to their children. . . ." This provision presents considerable uncertainty. Did
the parties intend to make a contract to make a will and be bound by the contract, or did
the parties contemplate that the stock would be held by them as life tenants, with the
remainder to the children? (2) 

 Funds for College. The amount of money which Charles would set aside for the
college education of the children was contingent and the amount not designated.

 We have not overlooked Tina's contention that the document constitutes a partition
of community property according to section 4.103 of the Family Code. However, the word
"partition" does not appear in the document but instead, speaks of "splitting" community
property and providing for child support, medical insurance, and education for the children.
These provisions are foreign to a partition of property but instead, indicate an intention that
the agreement is incident to a divorce, not a partition. Moreover, many of the flaws and
deficiencies noted above also apply to any agreement, partition, or otherwise.

 Accordingly, considering the evidence and controlling law, we do not find that the
finding by the trial court that the Brogan Settlement was neither a settlement agreement
nor a partition and exchange agreement is contrary to the great weight and preponderance
of the evidence or that it is clearly wrong and unjust. Issue one is overruled.

 By her second issue (3) Tina contends she was harmed by the property division of the
parties' community estate because the trial court abused its discretion by failing to properly
value a majority of both community and separate estate property. (4) We disagree.

 Because most appeals of family law cases terminate in a court of appeals, we take
this opportunity to revisit familiar rules as presented in a decision of the Texas Supreme
Court. In Murff v. Murff, 615 S.W.2d 696, 700 (Tex. 1981), the Supreme Court concluded:

 [t]he trial court in a divorce case has the opportunity to observe the parties
on the witness stand, determine their credibility, evaluate their needs and
potentials, both social and economic. As the trier of fact, the court is
empowered to use its legal knowledge and its human understanding and
experience. Although many divorce cases have similarities, no two of them
are exactly alike. Mathematical precision in dividing property in a divorce is
usually not possible. Wide latitude and discretion rests in the trial court and
that discretion should only be disturbed in the case of clear abuse. 


Equality in the division of property is not required and under Murff, this Court indulges
every reasonable presumption in favor of the proper exercise of discretion by the trial court
in dividing the community estate. Id. at 698; Johnson v. Johnson, 948 S.W.2d 835, 838
(Tex.App.--San Antonio 1997, pet. denied). The trial court is required to divide the property
in a manner that is just and right. To assist the trial court, the parties have the
responsibility to provide evidence of the value of the property. Wallace v. Wallace, 623
S.W.2d 723, 725 (Tex.Civ.App.--Houston [1st Dist.] 1981, writ dism'd). Tina has a heavy
burden to show from the evidence in the record that the division was so unjust and unfair
as to constitute an abuse of discretion. Wilson v. Wilson, 44 S.W.3d 597, 600 (Tex.App.--Fort Worth 2001, no pet.); Wallace, 623 S.W.2d at 725.

Baker Seibert Account


 Although Tina does not challenge the trial court's finding that 90 percent of the
account was her separate property and that Charles had a separate property interest of
10 percent, she contends the value of the account was only $510,000. As a result, she
argues she was harmed by the trial court's error in fixing the value. We disagree. Because
a trial court cannot divest a spouse of separate property, Eggemeyer v. Eggermeyer, 554
S.W.2d 137, 139-40 (Tex. 1977), and did not disturb her proportionate interest in the
account, the value of the account is of no consequence for these purposes. Even if the
trial court's finding of value was erroneous, a question we need not decide, Tina was not
prejudiced or harmed by any overestimation of its value because her 90 percent was
awarded to her. Pelzig v. Berkebile, 931 S.W.2d 398, 403 (Tex.App.--Corpus Christi 1996,
no writ). 

Household Furnishings and Books


and Leasing and Evaluations



 Tina recognizes that where the value of property is uncontested or even if
contested, the trial court does not abuse its discretion as long as the value assigned to the
asset is within the range of the evidence. Pelzig, 931 S.W.2d at 398. In her review of the
evidence of the household furnishings, jewelry, and books in her possession, among other
things, Tina referenced values which she placed on some of the items in her answers to
interrogatories. She does not refer to the record where such evidence can be found and
the clerk's record does not include Tina's answers to interrogatories. However, it appears 
the trial court accepted the estimates or evidence offered by Charles. In response, Tina
argues that the purchase price of the jewelry or art work does not constitute market value
for these purposes. However, the estimates and opinion of Charles were admitted without
any objection and thus were before the trial court for all purposes. Tex. R. Evid. 103(a);
 see also Lubbock County, Tex. v. Strube, 953 S.W.2d 847, 855 (Tex.App.--Austin 1997,
pet. denied). Moreover, the admission of evidence is a matter of discretion, and error is
not subject to reversal in the absence of a showing that the error was calculated to cause
and probably did cause rendition of an improper judgment. Exxon Corp. v. West Texas
Gathering Co., 868 S.W.2d 299 (Tex. 1993).

 Focusing now on the liabilities of the community estate for equipment leases totaling
approximately $666,000, Tina contends that in reality, although entitled as Equipment
Leases, because Charles has a right to purchase the equipment at the end of the lease
term for a suggested nominal amount, we should remand to the trial court for an evaluation
of the value of the equipment covered by the leases. However, under Wallace, 623
S.W.2d at 725, Tina had the burden to provide evidence of the value of the property, but
the record does not demonstrate that she offered any evidence of the value of the
equipment upon termination of the leases. Wilson, 44 S.W.3d at 600. 

 Finally, the trial court found Charles owed $393,796 on his line of credit to the bank. 
Tina points out, however, that the banker testified the line had been reduced from
$500,000 to $311,000 which, if correct, would be an excess liability of $72,000. However,
even if $72,000 is added to Charles's award of community property, the adjusted awards
would be $176,805 to Charles and $640,275 to Tina. Compared to the values and award
here, any such adjustment is de minimis. Accordingly, considering that mathematical
precision is not required and other factors discussed above, we conclude Tina has not met
her burden to show from the evidence in the record that the division was so unjust and
unfair as to constitute an abuse of discretion. Issue two is overruled. 

 By her third issue, Tina contends the trial court abused its discretion in awarding
only $1,500 in child support. We disagree. Tina grounds her argument upon an incorrect
premise when she argues: 

 [a]ssuming that the trial court ignored all of Tina's testimony regarding the
minimal reasonable needs of the children, the only other evidence in the
record concerning the need of the child is Dr. Brogan's exhibit 29A.


To the contrary, we do not assume the trial court ignored any evidence but instead, we
extend every reasonable presumption to the proper exercise of discretion by the trial court
consistent with the record. Huls v. Huls, 616 S.W.2d 312, 315 (Tex.Civ.App.--Houston [1st
Dist.] 1981, no writ). 

 Further by section 10 of the decree, the trial court ordered Charles to pay $1,500
per month to Tina as child support. Then by section 11, entitled "Additional Child Support-School Tuition" the court ordered Charles to pay the All Saint's School tuition through high
school. In addition, by section 12 entitled "Medical Support," Charles was ordered to
provide medical support and health insurance. According to the evidence, the tuition was
approximately $1,982 per month. The medical expenses were calculated at $118 (medical
insurance), plus one-half of other medical, psychologist, and dental expenses. In total, the
trial court ordered Charles to pay $3,420, plus the medical insurance and associated dental
and medical expenses per month. Considering that the trial court found that Tina has
specialized training and work experience and is capable of employment and that the total
amount of the support ordered to be paid is within the guidelines set out in section 154.126
of the Family Code, we conclude the support award was not an abuse of discretion by the
trial court. Issue three is overruled. 

 By her fourth issue, Tina contends the trial court erred in striking her supplement to
counterclaim and answer to petitioner's current pleadings insofar as it pled causes of action
by Brogan, Ltd. against Brogan P.A. We disagree.

 By her brief, Tina alleges that Brogan, Ltd., a limited partnership, bought the
property at 4110 22nd Street based upon an agreement by Brogan P.A., a professional
association, to lease the property for 10 years and pay a rent of $36,000 per month. 
Without joining Brogan Ltd. or Brogan P.A. as parties, by her supplemental counterclaim,
she alleged that she anticipated a breach of the agreement and requested the court to
either compel execution of the lease by Brogan, P.A. by specific performance or damages. 
Counsel for Charles objected to the pleading contending the limited partnership and the
professional association had not been made parties.

 Citing Schlueter v. Schlueter, 975 S.W.2d 584 (Tex. 1998), Tina argues that her
action for fraud should be litigated in this action. While the Court did hold that there is no
independent tort cause of action between spouses for damages to the community estate,
that rule does not make the trial court's action reversible error for several reasons. First, 
Brogan Ltd. and Brogan P.A. were not made parties to the suit. Second and more
important however, Schlueter did not bar Tina's presentation of evidence claiming fraud
on the community through the "just and right" provision. However, Tina did not attempt to
offer any evidence and the court's ruling did not bar any such evidence. Moreover,
because Tina did not make a formal bill of exception and present any evidence as required
by Rule 33.2 of the Texas Rules of Appellate Procedure, this issue was not preserved for
review. See Spivey v. James, 1 S.W.3d 380, 385 (Tex.App.--Texarkana 1999, pet.
denied). Issue four is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice


Quinn, J., not participating.

 


 

 

 

 


1. In all material respects, the document is set out verbatim.
2. Provisions for life estates in personalty are not favored. Bridges v. First National
Bank in Dallas, 430 S.W.2d 376, 382 (Tex.Civ.App.--Dallas 1968, no writ). 
3. Issue restated for purposes of our analysis.
4. Tina complains of the value assigned to (a) Baker Seibert Stock Account at
$780,000; (b) finding that household furnishings in her possession were worth $150,000;
(c) finding that books in her possession were worth $50,000; (d) finding leased equipment
was a liability of $666,512.39, and (e) finding that line of credit owed by Brogan P.A. was
$393,796.76 at the time of divorce. 


Last
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-even-header:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") eh1;
 mso-header:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") h1;
 mso-even-footer:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") ef1;
 mso-footer:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") f1;
 mso-first-header:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") fh1;
 mso-first-footer:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-even-header:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") eh2;
 mso-header:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") h2;
 mso-even-footer:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") ef2;
 mso-footer:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") f2;
 mso-first-header:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") fh2;
 mso-first-footer:url("07-00-0174.cv\(2\)%20opinion_files/header.htm") ff2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->








NO. 07-00-0174-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



OCTOBER
26, 2010

 



 

JAMES B.
CRENSHAW,

 

                                                                             Appellant

 

V.

 

MIDWEST
CONCRETE, INC., STEVE HOLBERT,

KENNETH
THOMAS, AND BEVERLY HOLBERT,

 

                                                                             Appellees

____________________________

 

FROM THE 137TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 97-560,037; HONORABLE CECIL G.
PURYEAR, PRESIDING

 



 

Memorandum
Opinion

 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

James B.
Crenshaw appeals from the trial courts summary judgment.  We dismiss the appeal.  On July 17, 2000, this Court issued an
opinion removing this case from the docket and abating it because appellee
Midwest Concrete had filed a bankruptcy petition.   The bankruptcy proceedings were closed as of
July 15, 2010, and this court reinstated the case on the docket on September
14, 2010.  Also on September 14, 2010,
counsel for appellant was notified that appellants brief was due no later than
October 14, 2010, no extension would be granted, and if the brief was not filed
by the deadline, the appeal would be dismissed for want of prosecution.  To date, no brief or motion to extend the
deadline has been filed.  Nor has the
court received any explanation for the omission.

Accordingly,
we dismiss the appeal for want of prosecution. Tex. R. App. P.  38.8(a)(1); 42.3(b).

Per
Curiam